## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER D. CARPENTER** | ) | |
| **and CURTIS A. VERRETT,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-2425-STA** |
| | ) | |
| **JOHN DOE 1, JOHN DOE 2,** | ) | |
| **MEMPHIS POLICE DEPARTMENT,** | ) | |
| **and CITY OF MEMPHIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER GRANTING DEFENDANT CITY OF MEMPHIS'S MOTION TO DISMISS THE AMENDED COMPLAINT AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Before the Court is Defendant City of Memphis' Motion to Dismiss the Amended Complaint (D.E. # 19) filed on September 1, 2010. Plaintiffs have responded in opposition to Defendants' Motion and filed a Motion for Leave to File a Second Amended Complaint (D.E. # 23). For the reasons set forth below, Defendants' Motion to Dismiss the Amended Complaint is **GRANTED**, and Plaintiffs' Motion for Leave to File a Second Amended Complaint is **DENIED**.

## BACKGROUND

According to Plaintiffs' Amended Complaint, on or about June 8, 2009, Plaintiffs Curtiss Verrett ("Verrett") and Christopher Carpenter ("Carpenter"), each of whom is an African American male, were driving on the streets of Memphis, Tennessee. (Am. Comp. ¶ 9.) Plaintiffs

1

were on vacation. (*Id*. ¶ 10.)  Defendant John Doe 1, a Caucasian, was driving or in a vehicle provided by Defendants Memphis Police Department ("MPD") and the City of Memphis ("the City").  (*Id*. ¶ 11.)  Verrett noticed the flashing lights and pulled the motor vehicle, owned by Carpenter, safely into a parking lot on Shelby Drive, in Memphis, Tennessee.  (*Id*. ¶ 12.)  Since Verrett was not speeding or doing anything improper, he asked Defendant John Doe 1 the reason that they were stopped.  (*Id*. ¶ 13.)  Defendant John Doe 1 stated that the "license plate secured to his vehicle was not visible."  (*Id*. ¶ 14.)  The license plate was held in place and secured by the same cover on the vehicle as when Carpenter purchased his vehicle. (*Id*. ¶ 15.)  The claim John Doe 1 made about the license plate not being visible was wrong and not true. (*Id*. ¶ 16.)  Defendant John Doe 1 was joined by Defendant John Doe 2, another MPD police officer, who also is Caucasian.  (*Id*. ¶ 17.)  Defendant John Doe 2 had his police drug dog with him.  (*Id*. ¶ 18.)

Defendant John Doe 1 asked Verrett for his driver's license, and Verrett complied.  (*Id*. ¶ 19.)  Defendant John Doe 1 also asked Verrett for permission to search the vehicle, but Verrett refused consent because he had done nothing wrong.  (*Id*. ¶ 20.)  John Doe 1 then told both Plaintiffs to get out of the vehicle. (*Id*.)  John Doe 1 asked if Plaintiffs had any drugs, weapons or cash.  (*Id*. ¶ 21.)  Plaintiffs replied that they did not have any drugs or weapons, but Verrett informed the officer that he had $1,000 in cash.  (*Id*.)  Both Plaintiffs held and continue to hold regular jobs.  (*Id*. ¶ 22.)  Verrett had earned the cash while working for his employer.  (*Id*.)  Plaintiffs explained that the source of the cash was Verrett's job.  (*Id*.)  Plaintiffs correctly responded to the officers' questions.  (*Id*. ¶ 33.)  However, neither Plaintiff was free to leave.  (*Id*. ¶ 23.)  John Doe 2's drug dog walked around the vehicle.  (*Id*. ¶ 24.)  Ultimately, John Doe 1

and John Doe 2 searched the car and found no drugs or contraband of any type.  (*Id*. ¶ 25.) Plaintiffs were detained at the rear of the patrol vehicle for some time and then placed in the rear of an MPD patrol car.  (*Id*. ¶ 28.)  After a detention of about two hours, Plaintiffs were released from the patrol car.  (*Id*. ¶¶ 29, 35.)  Furthermore, Carpenter's vehicle was damaged during the search.  (*Id*. ¶ 30.)

Each Plaintiff asked the reason for the stop, and they were told contradictory information. (*Id*. ¶ 26.)  At first, it was the supposed "license plate" violation and later, the officers told Plaintiff that the vehicle was purportedly similar to one police were searching for.  (*Id*.) Defendants had no legitimate reason or probable cause to make the stop or continue it and kept Plaintiffs longer than necessary.  (*Id*. ¶ 27.)

During the prolonged detention, John Doe 1 and John Doe 2 continued to question and berate both Plaintiffs, often repeating the same questions.  (*Id*. ¶ 31.)  Plaintiffs were wrongly accused of being drug dealers.  (*Id*.)  John Doe 1 and John Doe 2 falsely stereotyped Plaintiffs as drug dealers.  (*Id*. ¶ 32.)  During the detention, the Defendant officer(s) told Plaintiffs that they were "f_cking drug dealers."  (*Id*. ¶¶ 36, 38.)  At one point, Plaintiffs questioned the validity of the search and the officer(s) responded by saying "shut up or I will take your ass to jail."  (*Id*. ¶ 34.)  They heard John Doe 1 and John Doe 2 talking to each other, saying in effect, "I know we can get them on something." (*Id*. ¶ 36.)  John Doe 1 and John Doe 2 also scared and intimidated Plaintiffs by making untrue and unfounded accusations that Plaintiffs were drug dealers or criminals.  (*Id*.)  John Doe 1 and John Doe 2 had a racist attitude toward Plaintiffs and disrespected Plaintiffs because they were African-Americans.  (*Id*. ¶ 39.)  The day in question was a hot June day.  (*Id*. ¶ 40.)  During part of the traffic stop and search and seizure, Plaintiffs

were told to stand outside in the heat.  (*Id.*)  The Defendant officers had no probable cause to detain Plaintiffs.  (*Id.* ¶¶ 36, 37.)

After finding no drugs, weapons or other contraband, John Doe 1 and John Doe 2 apparently communicated with an MPD sergeant to come to the scene.  (*Id.* ¶ 41.)  The MPD sergeant, who was also Caucasian, talked to John Doe 1 and John Doe 2, and then Plaintiffs were given a lame excuse, which differed from the purported reason for the stop given in the first place: a supposed license plate violation.  (*Id.* ¶ 43.)  After being kept for about two hours with no probable cause, John Doe 1 gave Verrett a "warning ticket" and Plaintiffs were free to leave. (*Id.* ¶¶ 44, 45.)

Each Plaintiff was wrongfully seized and the vehicle wrongfully seized and searched in violation of the Fourth Amendment to the United States Constitution.  (*Id.* ¶ 47.)  Neither Plaintiff was booked, taken to jail or a detention center, or charged with any crime related to this stop or seizure.  (*Id.* ¶ 46.)  Plaintiffs allege that there was no legal basis for the stop, just an attempt to justify the unreasonably prolonged search and seizure.  (*Id.* ¶ 48.)  Defendant MPD has been investigated because its employees or officers have stolen or used drugs and related contraband not for the purpose of prosecuting drug dealers, but for improper and unlawful reasons.  (*Id.* ¶ 49.)  The City of Memphis and the MPD failed to adequately train and retrain the Defendant officers and acted with deliberate indifference as to the known and obvious consequence of not so doing.  (*Id.*)  Plaintiffs contend that the Defendant officers' acts were illegal and contrary to the MPD policy and procedure manual, but the officers were not adequately trained "in light of the known and obvious consequences attendant with failure to do so."  (*Id.* ¶ 50.)  Upon information and belief, the Defendant officers were trained not to

4

unreasonably detain citizens, not to unreasonably detain them for a prolonged time, and to stop vehicles only with probable cause, "but they were not adequately trained in light of the known and obvious consequences attendant with failure to do so." (*Id*. ¶ 51.)

The Amended Complaint states that the City of Memphis and the MPD, separately and together, have a long and bitter legacy of purposeful racial discrimination and failed to adequately train Defendants John Doe 1 and John Doe 2 regarding unreasonable searches and seizures for vehicles and for persons seized in the vehicles. (*Id*. ¶ 51A.)  With Memphis' long and bitter history of purposeful racial discrimination, the City and the MPD failed to take adequate steps to train the Defendant officers regarding racist attitudes and actions by police to citizens, and in particular minority citizens. (*Id*. ¶ 51B.)  The City and the MPD acted with deliberate indifference regarding appropriate training so as not to deprive citizens of the guarantees secured by the Fourth Amendment and the Fourteenth Amendment and separately with regard to the constitutional treatment of minority citizens such as Plaintiffs. (*Id*. ¶ 51C.) This failure to train amounted to a deliberate indifference to the rights of persons with whom the police officers and police come into contact, and the City and the MPD exhibited deliberate indifference to the known or obvious consequences of its failure to adequately train. (*Id*. ¶ 51D.) Upon information and belief, "doing so (sic) violated MPD policies and procedures and the Fourth Amendment to the United States Constitution, but the Defendants John Doe 1 and John Doe 2 were not adequately trained." (*Id*. ¶ 52.)

The Amended Complaint goes on to allege causes of action for violations of 42 U.S.C. § 1983 (Count I) and the tort of false imprisonment (Count II) and seeks compensatory damages for Plaintiffs' humiliation and embarrassment and punitive damages.  Plaintiffs further seeks a

written apology from all Defendants.

In the Motion before the Court, Defendant City of Memphis makes a series of arguments for dismissal of the Amended Complaint.  First, Defendant argues that Defendant MPD is not amenable to suit because it is a department of a municipality and the municipality is the proper party.  Second, Plaintiffs' claims against the Defendant officers in their official capacities is the same as a claim against the City.  Thus, these claims should be dismissed.  Third, the Amended Complaint fails to state a claim for violation of § 1983.  Defendant argues that Plaintiffs' claims lack specificity and allege facts that have no relevance to the alleged deprivation of Plaintiffs' rights.  For example, Plaintiffs' contention about instances where MPD officers have obtained drugs from drug dealers for personal gain has no relevance to whether the City of Memphis failed to train its officers about routine traffic stops.  Defendant argues that Plaintiffs' allegations about inadequate training are conclusory and lack the requisite specificity. While Plaintiffs admit that MPD has a policy and procedures manual, Plaintiffs simply allege without elaboration that the City did not adequately train the Defendant officers.  Next, Defendant contends that Plaintiffs have not stated constitutional claims for Fourteenth Amendment violations because the conduct alleged is properly considered as a Fourth Amendment claim.  Fifth, Plaintiffs tort claim for false imprisonment is barred by Tenn. Code Ann. § 29-20-205(2).  Finally, Plaintiffs may not recover punitive damages from the City.  Therefore, Defendant City of Memphis asks the Court to dismiss Plaintiffs' Amended Complaint.

Plaintiffs have responded in opposition to the City's Motion.  In their response, Plaintiffs argue that they have pled a plausible claim for violation of their Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983.  The officers' conduct resulted in an

unreasonably long seizure that violated Plaintiffs' Fourth Amendment rights.  Plaintiffs further allege that the City of Memphis and MPD failed to train or supervise the officers and that this policy of deliberate indifference was the moving force behind the violations of Plaintiffs' constitutional rights.  Next Plaintiffs contend that their Fourteenth Amendment equal protection and due process rights were violated by the traffic stop.  Plaintiffs insist that the MPD is a proper party and cite a number of federal cases in which the MPD was a named defendant. Plaintiffs go on to argue without elaboration that the John Doe officers are properly sued in their official and individual capacities.  Finally, Plaintiffs appear to concede that punitive damages are not available from the City of Memphis.

Plaintiffs have also filed a Motion for Leave to File Second Amended Complaint (D.E. # 23).  According to Plaintiffs' Motion, Plaintiffs have received information that MPD has no record of the traffic stop alleged in the Amended Complaint.  Plaintiffs seek to add a § 1983 allegation that MPD's police and custom of failing to ensure that a record was made and preserved of the traffic has violated Plaintiffs' constitutional rights.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pled allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[1]  However,

---

[1] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

legal conclusions or unwarranted factual inferences need not be accepted as true.[2]  "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[3]

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[4]  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[5]  In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[6]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7]

## ANALYSIS

Plaintiffs contend that their Amended Complaint has stated federal claims against the John Doe Defendant officers pursuant to 42 U.S.C. § 1983 for violations of Plaintiffs' Fourth Amendment rights and Fourteenth Amendment Due Process and Equal Protection rights.

---

[2] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[3] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 889, 902 (6th Cir. 2003).

[4] Fed. R. Civ. P. 8(a)(2).

[5] *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  *See also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

[6] *Iqbal*, 129 S.Ct. at 1949-50; *Twombly*, 550 U.S. at 570.

[7] *Iqbal,* 129 S.Ct. at 1949.

Plaintiffs argue that their § 1983 claims against the City of Memphis and MPD for the same

violations are based on the Defendants' failure to train the officers.  Plaintiffs further state that all

Defendants are liable for the intentional tort of false imprisonment.  As discussed previously,

Plaintiffs have filed a Motion for Leave to File a Second Amended Complaint in which they

request leave of court to add additional allegations against the City and the MPD for failure to

maintain adequate records of the stop at issue, particularly a copy of the "warning ticket."  Upon

review of Plaintiffs' Amended Complaint, the Court holds that Plaintiffs have failed to state their

federal claims against Defendants.  The Court will analyze each of Plaintiffs' claims in turn.

## I.  Claims Against the Memphis Police Department

The parties dispute whether the MPD is a proper party to this action.  It is well-settled

that the party against which to assert claims of constitutional and statutory violations by police

departments is the local municipality.[8]  In the case at bar, the proper party for the claims Plaintiff

brings against the MPD is the City of Memphis itself.[9]  Therefore, Defendants' Motion to

Dismiss Plaintiffs' claims against the MPD is **GRANTED**.

---

[8] *See, e.g., Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994) (proper party for suit against Jefferson County, Kentucky Police Department is Jefferson County); *Alexander v. Beale Street Blues Co.*, 108 F. Supp. 2d 934, 947 (W.D. Tenn.1999) (Memphis Police Department is not an independent entity capable of being sued).  *See also Thompson v. Shelby County*, No. 08-2695, 2009 WL 1035499, at *3 (W.D. Tenn. Apr. 16, 2009).

[9] *See Alexander,* 108 F. Supp. 2d at 947.  *See also* Martin A. Schwartz & Kathryn A. Urbonya, *Section 1983 Litigation* 85 (2d ed. 2008).

II.     **Claims for Punitive Damages Against the City of Memphis**

Defendants argue and Plaintiffs concede for purposes of this Motion that punitive damages are not available against the City of Memphis.  The Supreme Court has unequivocally held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983."[10]  Thus, Defendants' Motion to Dismiss Plaintiffs' claims for punitive damages against the City of Memphis is **GRANTED**.

III.    **Claims Against the John Doe Officers**

   *A. Official Capacity Claims*

In its initial motion to dismiss, which was incorporated in Defendants' Motion before the Court, Defendants argued that Plaintiffs' claims against the John Doe officers named in the suit should be dismissed.  According to Defendants, the claims against the officers in their official capacities are actually claims against the City itself.  The Court agrees.  "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."[11]  When government employees like the John Doe officers are sued in their official capacities, the action "is equivalent to a suit against" the City of Memphis.[12]  Therefore, Defendants' Motion to Dismiss all claims against the John Doe officers in their official capacities with the City of Memphis is **GRANTED**.

---

[10] *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

[11] *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

[12] *Knott v. Sullivan*, 418 F.3d 561, 574-75 (6th Cir. 2005).

### B. Individual Capacity Claims

Defendants further argue that the Court should dismiss all claims against the John Doe officers in their individual capacities because the statute of limitations has now run on those claims. Actions brought in Tennessee under § 1983 are subject to a one-year statute of limitations.[13] Where an amendment to a complaint would add a new party, the amendment must come within the statute of limitations period or relate back to the original filing date of the complaint.[14] Naming a John Doe defendant cannot save a pleading from this requirement.[15] To date Plaintiffs have not sought to amend their pleadings to replace the John Doe Defendant officers with a named defendant. In fact, Plaintiffs state in their Motion for Leave to File Second Amended Complaint that the City of Memphis and MPD have no record of the traffic stop in question. It follows that the identities of the officers are not readily discoverable. In any event, for the amendment to be timely, Plaintiffs would have needed to file such an amendment to name the John Does by June 8, 2010, one year after the officers allegedly pulled Plaintiffs' vehicle over.[16] Therefore, Plaintiffs' claim against the unknown officers may only survive dismissal if any future amendment can relate back to the original date they filed suit.[17]

---

[13] *See* Tenn.Code Ann. § 28-3-104(a)(3); *Berndt v. Tennessee,* 796 F.2d 879, 883 (6th Cir. 1986).

[14] *Cox v. Treadway,* 75 F.3d 230, 240 (6th Cir. 1996).

[15] *Id.*; *Force v. City of Memphis,* 101 F.3d 702, at *11-12 (Table) (6th Cir. Nov. 14, 1996) (applying *Cox* ). *See also Wilson v. Delta Airlines, Inc.*, No. 09-2687, 2010 WL 2836326, at *3-4 (W.D. Tenn. July 9, 2010); *Lovelace v. City of Memphis Police Dept.*, No. 08-2776, 2010 WL 711190, at *3-5 (W.D. Tenn. Feb. 24, 2010).

[16] *See* Tenn.Code Ann. § 28-3-104(a)(3).

[17] *Cox,* 75 F.3d at 240.

Federal Rule of Civil Procedure 15(c) governs the relation back of amendments to the date of the original pleading. It provides:

> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
>
>> (A) the law that provides the applicable statute of limitations allows relation back;
>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading; or
>> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>
>>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.[18]

As noted above, the applicable statute of limitations will not allow an amendment to relate back, making Rule 15(c)(1)(A) not applicable.[19]  Thus, for any amendment to relate back, the amendment must satisfy the provisions of both Rule 15(c)(1)(B) and (C) [20]  The Court will assume a future amendment would meet Rule 15(c)(1)(B)'s requirement that the amendment relate to "a claim ... that arose out of the conduct. . . set out. . . in the original pleading" because Plaintiffs would be seeking to add the names of the officers who pulled their vehicle over on

---

[18] Fed. R. Civ. P. 15(c)(1).

[19] *See* Tenn. Code Ann. § 28-3-104(a)(3) (providing for a one-year limitations period); *see also* Fed. R. Civ. P. 15(c)(1)(A).

[20] This is because Rule 15(c)(1)(C) also requires a party to meet the requirements of subsection (B). *See* Fed. R. Civ. P. 15(c)(1)(C) (an amendment is valid "if Rule 15(c)(1)(B) is satisfied").

June 8, 2009.[21]  Plaintiffs must then satisfy the two requirements of subsection (c)(1)(C).  In this case, the Court finds that they can satisfy neither.

Rule 15(c)(1)(C) first requires that the party to be added to have received notice of the pending action.[22]  The party must have had that notice within 120 days of the date Plaintiffs originally filed their suit, i.e., the time period Federal Rule of Civil Procedure 4(m) allows for serving the summons and complaint.[23]  The Sixth Circuit has suggested in *dicta* that this notice can be actual or constructive.[24]  The notice inquiry is factual and takes into account the totality of the circumstances surrounding the proposed new defendants and their relation to the already named defendants.[25]

In this case, one factor suggests that constructive notice might be inferred.  The officers are alleged to have worked for one of the original named Defendants MPD.[26]  However, there is no indication in Plaintiff's pleadings that any of the officers who allegedly participated in the traffic stop in 2009 were high-ranking supervisors or would have any other reason to be aware of

---

[21] *See Force,* 101 F.3d at *6-7 (finding Rule 15(c)(1)(B) satisfied when officers to be named are the same as those who allegedly violated plaintiff's rights during incident in question).

[22] Fed. R. Civ. P. 15(c)(1)(C)(i).

[23] *See* Fed.R.Civ.P. 15(c)(1)(C) (making the time period allowed for service under Rule 4 the limitations period for notice).

[24] *See Berndt,* 796 F.2d at 884 ("We believe that Rule 15(c) does not require that the new defendants received actual notice." (citation omitted)) (dicta).

[25] *Id.*; *Force,* 101 F.3d at *11 (describing the *Berndt* factors as a "non-exhaustive list").

[26] *Cf. Berndt,* 796 F.2d at 884 (suggesting that, where a proposed individual defendant worked for an already-named corporate defendant, suing the corporate defendant might give constructive notice to the party).

the legal affairs of the MPD.[27]  Plaintiffs are represented by counsel, unlike the *Berndt* plaintiff,

who was *pro se*.  Thus, there is also no justification to apply the normal procedural rules more

leniently.[28]  No such miscarriage of justice would result here.  The Court finds then that Plaintiffs

cannot meet the notice requirement of Rule 15(c)(1)(C).

      Likewise, Plaintiffs fails to satisfy Rule 15's second requirement that, but for the mistake

in identity, the proposed new defendant knew or should have known that an action would have

been brought against him.[29]  The Sixth Circuit held in *Cox* that, because naming unknown officer

defendants is not a "mistake or misnomer," a late-filed amendment to add a party cannot meet

Rule 15's mistaken identity requirement.[30]  Because Plaintiffs would have to meet both

requirements of Rule 15 to amend their pleadings and identify the John Doe officers, their failure

on the second prong alone is sufficient to preclude suit against the John Doe Defendants here.[31]

At this time, more than four months after the statute of limitations has run on Plaintiffs' claims,

Rule 15 prevents Plaintiffs from adding any defendant who has yet to be named.  Therefore,

Defendants' Motion to Dismiss the claims against the John Doe officers in their individual

---

    [27] *Compare* Am. Compl. ¶¶ 5-6 (describing each John Doe Defendant simply as "police officer employed or assigned to or for" MPD), *with Force,* 101 F.3d at *8-9 (where officers are not "'high officials' of the city or of the police department and would not have been involved in the city's legal affairs," Rule 15(c)(1)(C)(i) not satisfied).

    [28] *Berndt,* 796 F.2d at 882-83 (explaining that, to avoid a "miscarriage of justice," the *pro se* plaintiff should be allowed to amend his Complaint).

    [29] Fed. R. Civ. P. 15(c)(1)(C)(ii).

    [30] 75 F.3d at 240.

    [31] *Force,* 101 F.3d at *11-14 (noting the mistaken identity requirement as an additional reason to affirm the district court's refusal to allow the amendment).

capacities must be **GRANTED**.

IV.    **Section 1983 Claims Against the City of Memphis for Violations of Plaintiffs' Due Process Rights Under the Fourteenth Amendment**

Defendants next argue that Plaintiffs' § 1983 claims for violations of the Fourteenth Amendment should be analyzed under the Fourth Amendment instead.  Plaintiffs have described these claims as violations of their due process rights secured by the Fourteenth Amendment.  The Fourteenth Amendment's guarantee that "no State shall ... deprive any person of life, liberty, or property, without due process of law,"[32] has long been understood to "guarantee[ ] more than fair process."[33]  These additional guarantees, known as substantive due process, protect those mental rights and liberties which are [so] deeply rooted in this Nation's history and tradition" that "neither liberty nor justice would exist if they were sacrificed."[34]  The government may not deprive a person of these aspects of personal liberty "regardless of the fairness of the procedures"

---

[32] U.S. Const. amend. XIV, § 1.

[33] *Washington v. Glucksberg,* 521 U.S. 702, 719, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (citation omitted).

[34] *Id.* at 720-721 (internal quotation marks and citations omitted); *see, e.g., Planned Parenthood of Southeastern Penn. v. Casey,* 505 U.S. 833 (1992) (abortion); *Eisenstadt v. Baird,* 405 U.S. 438 (1972) (contraception); *Loving v. Virginia,* 388 U.S. 1 (1967) (right to marry); *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535 (1942) (right to have children); *Pierce v. Society of Sisters,* 268 U.S. 510 (1925) (right to direct the education and upbringing of one's children).

employed.[35]  These protections emanate from "the touchstone of due process": protecting individuals from "arbitrary action[s] of government."[36]

Nevertheless, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense."[37]  Because the Supreme Court has been reluctant to expand the scope of substantive due process, it has explained that, "where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized notion of substantive due process" applies.[38]  Plaintiffs' claims are based on the John Doe officers' unreasonable detention of Plaintiffs during a traffic stop.  These allegations are covered by the Fourth Amendment's explicit textual protections against "unreasonable searches and seizures."[39]  Because a specific constitutional provision applies, Plaintiffs have failed to state a separate substantive due process claim under the Fourteenth Amendment.[40]  Therefore, Defendants' Motion to Dismiss Plaintiff's § 1983 claim for violations of their due process rights under the Fourteenth Amendment is

---

[35] *County of Sacramento v. Lewis,* 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (internal quotation marks and citation omitted).

[36] *Id.* at 846 (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

[37] *Lewis,* 523 U.S. at 846 (internal quotation marks and citation omitted).

[38] *Lewis,* 523 U.S. at 842 (internal quotation marks and citation omitted).

[39] *See* U.S. Const. amend IV.

[40] *Lewis,* 523 U.S. at 842.

16

**GRANTED.**[41]


**V.    Section 1983 Claims Against the City of Memphis for Violations of Plaintiffs'
Fourth Amendment Rights and Fourteenth Amendment Equal Protection Rights**

Plaintiffs only remaining federal causes of action are their § 1983 claims for violation of

the Fourth Amendment rights and their equal protection rights under the Fourteenth Amendment.

Construing the Amended Complaint in the light most favorable to the Plaintiff and accepting all

factual allegations as true, the Court concludes that Plaintiff has failed to state these § 1983

claims against the City of Memphis.  Section 1983 creates a cause of action when there is a

deprivation "of any rights, privileges, or immunities secured by the Constitution," as a result "of

any statute, ordinance, regulation, custom, or usage, of any State."[42]  In cases of local government

liability, a plaintiff must allege the following: (1) that the plaintiff has suffered a deprivation of a

constitutional right; and (2) the local government is responsible for that violation.[43]  Furthermore,

a local governmental entity, such as a municipality, "is not vicariously liable under § 1983 for the

constitutional torts of its agents: it is only liable when it can be fairly said that the [entity] itself is

_____

[41] *See Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)
("A free citizen's claim that law enforcement officials used excessive force in the course of
making an arrest, investigatory stop, or other 'seizure' of his person ....[is] properly analyzed
under the Fourth Amendment's 'objective reasonableness' standard rather than under a
substantive due process standard.").

[42] 42 U.S.C. § 1983.

[43] *Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*, 103
F.3d 495, 505-506 (6th Cir. 1996).

the wrongdoer."[44]  Instead, a plaintiff must allege that the constitutional tort was a result of a

policy or custom of the local government entity itself.[45]

### A. Plaintiffs Have Plausibly Alleged a Deprivation of Constitutional Rights

Defendants do not challenge the assertion that the allegations about the traffic stop in this

case violated Plaintiffs' Fourth Amendment rights.  The Fourth Amendment secures our freedom

from "unreasonable searches and seizures."  A person is "seized" by a law enforcement officer

when, "in view of all the circumstances surrounding the incident, a reasonable person would

have believed that he was not free to leave."[46]  When an officer has "reasonable suspicion" that

criminal activity may be afoot, the officer may conduct a limited seizure and briefly detain a

---

[44] *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 121, 112 S.Ct. 1061, 117
L.Ed.2d 261 (1992).  *See also Jett v. Dallas Independent School District*, 491 U.S. 701, 726-29,
109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (discussing history of civil rights statutes and
concluding that Congress plainly did not intend to impose vicarious liability on counties,
municipalities or other local governmental bodies); *City of Canton, Ohio v. Harris*, 489 U.S. 378,
388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (rejecting simple vicarious liability for
municipalities under § 1983).

[45] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122, 108 S.Ct. 915, 99 L.Ed.2d 107
(1988) (interpreting rejection of *respondeat superior* liability by *Monell v. Dept. of Soc. Serv.*,
436 U.S. 658, 691 (1978), as a command that "local governments . . . should be held responsible
when, and only when, their official policies cause their employees to violate another person's
constitutional rights"); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89
L.Ed.2d 452 (1986) (same); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997)
(rejecting claims against city and county and holding that "in order to state a claim against a city
or a county under § 1983, a plaintiff must show that his injury was caused by an unconstitutional
'policy' or 'custom' of the municipality", citing *Pembaur*).

[46] *Smoak,* 460 F.3d at 778 (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100
S.Ct. 1870, 64 L.Ed.2d 497 (1980)).

person for investigative purposes.[47]  "Reasonable suspicion" is an abstract concept: it requires more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard.[48]  If an officer possesses a particularized and objective basis for suspecting the particular person of criminal activity based on specific and articulable facts, he may conduct a *Terry* stop.[49]  Courts must examine the totality of the circumstances to determine whether reasonable suspicion existed to justify a *Terry* stop.[50]

Plaintiffs further allege that the officers' conduct in this traffic stop violated their equal protection rights secured by the Fourteenth Amendment.  Defendants do not squarely address this point in their papers.  However, it is clear that the Amended Complaint does allege violations of Plaintiffs' equal protection rights.[51]  The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."[52]  The Supreme Court has stated that this language "embodies the general rule that

---

[47] *Terry v. Ohio,* 392 U.S. 1, 30-31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

[48] *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008).

[49] *Id*.

[50] *Id*.

[51] *See* Am. Compl. ¶ 69 (quoting the Fourteenth Amendment); ¶ 72 ("Plaintiffs were deprived of their liberty and property and denied equal protection of the law.  They were singled out by Defendants JOHN DOE 1 and JOHN DOE 2 because of their race."); and ¶ 73 ("Plaintiffs were deprived of the equal protection of the law and their liberty without due process of law by the longer than necessary stop and seizure.  They were held without being taken to a Magistrate.").

[52] U.S. Const. amend. XIV, § 1.

States must treat like cases alike but may treat unlike cases accordingly."[53]  The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference.[54] Plaintiffs may state a claim for violations of their equal protection rights under the Fourteenth Amendment where they allege that a state actor has burdened a fundamental right, which they were exercising, targeted a suspect class, of which they are a part, or treated them any differently than others similarly situated without any rational basis."[55]  Here Plaintiffs have alleged that officers targeted them because of their race by pulling them over and detaining them in a traffic stop for an unreasonably long period of time.  Unlike Plaintiff's substantive due process claims under the Fourteenth Amendment, their equal protection claims are cognizable.  The Court must now determine whether Plaintiffs' have stated a claim to make the City liable for these alleged constitutional violations.

### B.  Whether the City of Memphis is Responsible for the Alleged Violations

As for the second prong of Plaintiffs' § 1983 claim, Plaintiffs must show that the City of Memphis was responsible for the alleged constitutional deprivations.  A municipality cannot be held liable pursuant to § 1983 under a theory of *respondeat superior* for the actions of its employees.[56]  For a municipality to be liable under § 1983, the local government's policy or

---

[53] *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005) (quoting *Vacco v. Quill,* 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997)).

[54] *Radvansky*, 395 F.3d at 312 (citing *Vacco* and *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam))..

[55] *Radvansky*, 395 F.3d at 313.

[56] *Monell*, 436 U.S. at 691.

custom must be the "moving force of the constitutional violation."[57] A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law."[58]  In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy."[59]  It must reflect a course of action deliberately chosen from among various alternatives.[60]  In short, a "custom" is a "legal institution" not memorialized by written law.[61]  Additionally, Plaintiff must show a direct causal link between the custom and the constitutional deprivation, that is, "the particular injury was incurred because of the execution of that policy."[62]

The inadequacy of police training may serve as the basis for § 1983 liability, but only where the failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact."[63]  Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a

---

[57] *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1982) (quoting *Monell,* 436 U.S. at 694).

[58] *Monell,* 436 U.S. at 691 (internal quotation marks and citation omitted); *see also Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.), *cert. denied,* 510 U.S. 826, 114 S.Ct. 90, 126 L.Ed.2d 57 (1993).

[59] *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning,* 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1940).

[60] *City of Oklahoma v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985).

[61] *Feliciano,* 988 F.2d at 655.

[62] *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993) (citation omitted), *cert. denied,* 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994).

[63] *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (quoting *City of Canton*, 489 U.S. at 388).

shortcoming be properly thought of as a "policy or custom" under § 1983.[64]

"To succeed on a failure to train or supervise claim, a plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury."[65]  In order to make these showings, the "plaintiff [must] do more than point to something the city could have done to prevent the unfortunate incident."[66]  To show deliberate indifference, Plaintiff must show prior instances of unconstitutional conduct demonstrating that the City has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.[67]  In the alternative, "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability."[68]

Plaintiff must state a claim for relief that is plausible on its face to survive a motion to dismiss.[69]  A claim is plausible when the plaintiff pleads facts that allow the court to draw the

---

[64] *Cherrington v. Skeeter,* 344 F.3d 631, 646 (6th Cir. 2003).

[65] *Ellis v. Cleveland Mun. Sch. Dist.,* 455 F.3d 690, 700 (6th Cir. 2006) (citing *Russo v. City of Cincinnati,* 953 F.2d 1036, 1046 (6th Cir. 1992)).

[66] *Kahlich v. City of Grosse Pointe Farms*, 120 F. App'x 580, 585 (6th Cir. 2005).

[67] *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (citations and quotation marks omitted).

[68] *Plinton*, 540 F.3d at 464 (quoting *Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

[69] *See Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

reasonable inference that defendant is liable for the misconduct alleged.[70]  This plausibility standard is not a "probability requirement," but rather requires more than a sheer possibility of unlawful actions.[71]  If a complaint pleads facts that are "merely consistent with" liability, it "stops short of the line between possibility and plausibility of relief."[72]

Applying the *Iqbal* pleading standard, the Court holds that Plaintiffs have failed to allege plausible § 1983 claims against the City of Memphis.  The Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[73]  Plaintiffs' claims regarding Defendant City of Memphis' custom, policy or practice of concerning traffic stops and police encounters with minority citizens amount to legal conclusions without additional factual assertions of any kind.  In fact, the Court finds that all of Plaintiff's allegations are nothing more than formulaic recitations of the elements of a § 1983 claim.  For this reason alone, Plaintiffs' claims should be dismissed.[74]

It is true that Plaintiffs have alleged in great detail the traffic stop of June 8, 2009.  Yet other than to state that the City of Memphis has policies on traffic stops, the Amended Complaint is devoid of any facts related to Memphis' traffic stop policy, or a municipal custom, policy or

---

[70] *Id.*

[71] *Id.*

[72]  *Id.*

[73] *Iqbal,* 129 S.Ct at 1950.

[74] *See Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 780-81 (W.D. Tenn. 2010) ("Stripped of legal language, Plaintiff's Complaint contains no facts that could plausibly lead one to believe that the City deliberately ignored a history of abuse by officers in the Memphis Police Department.").

practice regarding minority drivers or passengers.  The only possible fact allegation that might go to show Defendant's deliberate indifference is Plaintiffs' simple assertion that Memphis has "a long and bitter legacy of purposeful racial discrimination."[75]  Even if the Court accepts this factual assertion as true, this general proposition is too vague to offer factual support for Plaintiffs' claims about the City's custom or policy of deliberate indifference to unreasonable traffic stops involving African-American drivers and otherwise fails to demonstrate an entitlement to relief.

The Amended Complaint further alleges that during the traffic stop, the officers accused Plaintiffs of being drug-dealers[76] and that MPD "has been investigated because its employees or officers have stolen or used drugs and related contraband not for the purpose of prosecuting drug dealers, but for improper and unlawful reasons."[77]  Here again, even accepting the allegations as true, the Court fails to see how these allegations would even support an inference, much less allege, a municipal custom or policy amounting to deliberate indifference towards improper traffic stops or the treatment of minority drivers.  There are no factual allegations in the pleadings to plausibly connect an accusation about being a drug-dealer with the MPD's alleged history of obtaining drugs from drug-dealers.  In short, Plaintiffs' Amended Complaint contains

> no facts. . . that reasonably describe a specific policy or custom of the City [] that violated [Plaintiffs'] constitutional rights.  Instead, [the pleading] merely recites the elements of a cause of action to hold the City [] responsible for the actions of its employees.  This is

---

[75] Am. Compl. ¶ 51A.

[76] *Id*. ¶¶ 31-32, 36 38.

[77] *Id*. ¶ 49.

precisely the type of claim that is not actionable in a § 1983 action.[78]

As a result, Plaintiffs' pleadings have "stop[ped] short of the line between possibility and plausibility" regarding municipal liability.[79]  Therefore, Defendants' Motion to Dismiss is **GRANTED** as to these claims.

## VI.   Plaintiffs' Tort Claims for False Imprisonment

Plaintiffs' remaining claims against the City of Memphis are tort claims for false imprisonment.  The liability of the City for torts committed by its employees and agents is governed by the Tennessee Governmental Tort Liability Act ("GTLA").[80]  Under the GTLA, municipalities in Tennessee are immune from suit with certain narrow exceptions and waivers of immunity set forth in the GTLA.  A municipality is generally subject to suit for civil actions sounding in negligence unless the negligence claims "arise out of" the exceptions provided in

---

[78] *Buster v. City of Cleveland*, No. 09-1953, 2010 WL 330261, at *9 (N.D. Ohio Jan. 21, 2010) (dismissing claim of *Monell* liability which only "tenders naked assertions devoid of further factual enhancement").  *See also Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005) ("The danger in appellants' argument is that they are attempting to infer a municipal-wide policy based solely on one instance of potential misconduct.  This argument, taken to its logical end, would result in the collapsing of the municipal liability standard into a simple *respondeat superior* standard.").

[79] *See also Hutchison v. Metro. Gov't of Nashville & Davidson, County*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010) (dismissing § 1983 claim for *Monell* liability based on improper traffic stop); *Johnson v. Metro. Gov't of Nashville & Davidson County*, No. 10-0589, 2010 WL 3619790, at *3 (M.D. Tenn. Sept. 13, 2010); *Ghaster v. City of Rocky River*, No. 09-2080, 2010 WL 2802685, at *7 (N.D. Ohio May 12, 2010); *Williams v. City of Cleveland*, No. 09-1310, 2009 WL 2151778 (N.D. Ohio Jul 16, 2009) (plaintiff failed to state a *Monell* claim where he made "no factual allegation that can support the conclusion that the City has a policy or custom of ignoring exculpatory evidence and continuing with prosecutions").

[80] Tenn. Code Ann. § 29-20-205.

Tenn. Code Ann. § 29-20-205.[81]  The City retains immunity under the GTLA when the injury arises out of one of the specified torts enumerated in subsection (2) of Section 29-20-205.[82]  The Tennessee Supreme Court has held that immunity is removed for all other intentional torts not specifically listed among these exceptions in the GTLA.[83]  Other courts applying Tennessee law have used the same reasoning to conclude that immunity is removed for claims for false imprisonment generally.[84]  Tenn. Code Ann. § 29-20-205(2) retains immunity from suit for injuries arising only out of "false imprisonment pursuant to a mittimus from a court."[85]  The GTLA does not retain immunity from suit arising out all false imprisonments but is expressly limited to those pursuant to a mittimus from a court.[86]  In the case at bar, Plaintiffs have not alleged false imprisonment from a court-issued mittimus.  Therefore, this provision of the GTLA would not bar the claim against the City of Memphis.

Nevertheless, Plaintiffs' tort claims of false imprisonment are based upon the alleged violation of their civil rights by the MPD officers.  The Court holds that Plaintiffs' false

---

[81] § 29-20-205(2).

[82] *See Limbaugh v. Coffee Med. Ctr.,* 59 S.W.3d 73, 82 (Tenn. 2001)

[83] *Limbaugh,* 59 S.W.3d at 82 (holding that immunity for the intentional tort of assault and battery removed because that tort is not listed as an exception in the GTLA).

[84] *See Elmore v. Cruz,* No. E200-03136-COA-R3-CV, 2003 WL 239169, at *4 (Tenn. Ct. App. Feb. 4, 2003); *Hale v. Randolph,* No. 1:02-CV-334, 2004 WL 1854179, at *16 (E.D. Tenn. Jan. 30, 2004).

[85] Tenn.Code Ann. § 29-20-205(2).

[86] *Uhuru v. City of Memphis*, No. 08-2150, 2008 WL 4646156, at *10 (W.D. Tenn. Oct. 17, 2008).

imprisonment cause of action arises out of "civil rights."  Among the tort claims excepted in the GTLA are claims for violations of civil rights.  Based on this provision, the City is entitled to immunity from suit on claims of false imprisonment pursuant to the "civil rights" exception in Tenn. Code Ann. § 29-20-205(2).  Therefore, Defendants' Motion to Dismiss those claims is **GRANTED**.

### VII.   Plaintiffs' Motion for Leave to File Second Amended Complaint

Finally, the Court will consider whether leave to file a Second Amended Complaint should be granted.  A pleading may be amended "only by leave of court . . . and leave shall be freely given when justice so requires."[87]  "In deciding whether to allow an amendment, the court should consider the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment."[88]  A "trial court may appropriately assess the legal sufficiency of a contemplated amendment in considering the propriety of granting leave to amend under Fed. R. Civ. P. 15(a) and deny the motion if amendment would be futile."[89] Plaintiffs have certified that Defendants do not oppose the Motion for Leave to File a Second Amended Complaint.[90]  Plaintiffs correctly argue that leave to amend should be freely given and that their Motion was filed before the Court's deadline for amending pleadings had passed.

---

[87] Fed. R. Civ. P. 15(a)(2).

[88] *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001).

[89] *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 633 (6th Cir. 2009).

[90] Mot. for Leave to File Second Am. Compl., Certificate of Consultation (D.E. # 23) Oct. 8, 2010.

According to Plaintiffs' Motion, Plaintiffs have learned additional facts since the filing of their Amended Complaint, which they have added in their proposed second amended complaint. Although the Motion for Leave to File the Second Amended Complaint does not identify the proposed new allegations, Plaintiffs' response in opposition to Defendants' Motion to Dismiss the Amended Complaint does.  There Plaintiffs argue that they have learned that the MPD has no record of the traffic stop and no copy of the warning ticket the officers allegedly issued to Plaintiffs.  Thus, Plaintiffs seek to add the following paragraphs in their proposed second amended complaint:

44a. The warning ticket did not compel or require Plaintiffs to appear in court or pay any fine.

44b. Defendants did not retain a copy of it or cannot find a copy of it.

44c. Defendants failed to make or maintain any record of the stop and seizure.

44d. Defendants failed to make or maintain a copy of the ticket in spite of Defendants' CITY OF MEMPHIS and/or MEMPHIS POLICE DEPARTMENT policies and/or procedures directing or requiring them to do so.

44e. This failure to make or maintain a record in violation of policy or procedure – in the light of blatant Fourth Amendment violation – was and is an attempt by police officers to cover their tracks.

44f. Neither Defendant CITY OF MEMPHIS nor Defendant MEMPHIS POLICE DEPARTMENT took any action to preserve the record, require the officers to submit their reports, or took measures to ensure that they did so in spite of a supervisor being at the scene.

44g. This glaring failure is made worse by the reality of recent public, high profile public investigations of the MEMPHIS POLICE DEPARTMENT.

44h. This failure to follow policy and procedure amounted to a deliberate indifference or worse to the rights of persons with whom the police officers and police come into contact, and the CITY OF MEMPHIS and the MEMPHIS POLICE DEPARTMENT exhibited deliberate indifference to the known or obvious consequences of its failure.

44i. By custom or practice, Defendants CITY OF MEMPHIS and MEMPHIS POLICE DEPARTMENT permit its or their police officers to avoid making reports of stops, seizures, or similar events for which some or all of them might face liability, embarrassment, or other similar sanction; or, Defendants CITY OF MEMPHIS or MEMPHIS POLICE DEPARTMENT have a custom or practice of turning a blind eye to permitting them not to make said types of reports.

The Court holds that amending the pleadings to include these additional allegations would be futile under the circumstances.  First, having already dismissed any claim against the MPD, any new allegations against MPD would be futile for the same reasons already discussed above.  More critically, Plaintiffs' new allegations appear to assert another cause of action against the City of Memphis for violations of § 1983.  Plaintiffs allege that the City failed to preserve a record of the stop or require the officers to submit a report.  Plaintiffs further allege that the City has a policy or custom of permitting police officers not to report improper stops or plainly turning a blind eye when police officers do not make such reports.  Plaintiffs plead that this municipal policy or custom was the moving force behind the officers' violations of their rights.  Applying the same *Iqbal* standards discussed above to these newly proposed pleadings, the Court holds that they suffer from the same defects as Plaintiffs' other *Monell* claims against the City.  When stripped of their legal conclusions, the new allegations fall short of the plausibility standard.  Plaintiffs have cited no prior instances of police officers failing to make reports and, more importantly, no examples of the City turning a blind eye to such failures to

29

follow procedure.[91]  Plaintiffs only contend that "[t]his glaring failure is made worse by the reality of recent public, high profile public investigations of" the MPD.  Even accepting the allegation that the officers failed to make a report in an effort to "cover their tracks," the Court finds that these additional allegations do not establish a causal connection between the officers' alleged actions and a municipal custom or policy.  In effect Plaintiffs only seek to hold the City liable for the acts of its employees without a showing that the City was responsible for the alleged violations, a result the Supreme Court has never approved.  There is simply no factual predicate in the proposed pleadings to show that the City was the moving force behind the alleged constitutional deprivations.  Permitting Plaintiffs to file a second amended complaint to add these contentions would be futile because these allegations would fail to state a claim upon which relief may be granted.  Therefore, Plaintiffs' Motion for Leave to File the Second Amended Complaint is **DENIED**.

## <u>CONCLUSION</u>

The Court holds that Plaintiff has failed to state any his 42 U.S.C. § 1983 claims against any of the Defendants.  Plaintiffs have also failed to state their claims for false imprisonment pursuant to the GTLA.  Therefore, Defendants' Motion to Dismiss the Amended Complaint is **GRANTED**.  Plaintiffs' Motion for Leave to File a Second Amended Complaint is **DENIED** as futile.

**IT IS SO ORDERED.**

---

[91] The Court also notes that the proposed amendments do not allege that the City failed to train the officers "to handle recurring situations presenting an obvious potential for such a violation."

**s/ S. Thomas Anderson**

S. THOMAS ANDERSON

UNITED STATES DISTRICT JUDGE

Date: November 29th, 2010.